IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO. 6:13-cv-1030-ORL-36TBS

TRACFONE WIRELESS, INC., a Delaware
Corporation,

       Plaintiff,

v.

ALICIA D. WASHINGTON a/k/a ALICIA D.
AUGUSTO, individually; THE REAL
IMAGINATION, LLC, a Florida limited
liability company; JARA MATEO,
individually; ROLANDO R. QUISCA
ASTOCAHUANA, individually; ROSA
LOPEZ, individually; ROLO
MULTISERVICES, INC., a Texas corporation;
CAROLINA DAVILA SANTILLANA,
individually; RICARDO VALENZUELA,
individually;

       Defendants.
_____ /

**PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

    Plaintiff TracFone Wireless, Inc. ("TracFone") hereby moves for preliminary injunctive

relief against Defendants Alicia D. Washington a/k/a Alicia D. Augusto, individually

("Washington"), The Real Imagination, LLC ("Imagination"), Jara Mateo, individually

("Mateo"), Rolando R. Quisca Astocahuana, individually ("Quisca"), Rosa Lopez, individually

("Lopez"), Rolo Multiservices, Inc. ("Rolo"), Carolina Davila Santillana, individually

("Santillana"), and Ricardo Valenzuela, individually ("Valenzuela") (collectively, the

"Defendants"). In support of this Motion, TracFone states as follows:

### INTRODUCTION

    Defendants are engaged in a multistate scheme that preys on Spanish speakers and illegal

immigrants by promising a certain brand of phone, obtaining payment, and delivering a far less

expensive model to the unsuspecting victims (the "Phone Switch Scheme"). Because the victims are less prone to report such fraud, Defendants are able to evade consequences and perpetuate the Phone Switch Scheme. Defendants' conduct, which includes, *inter alia*, advertising online by improperly using TracFone's trademarks and brand, is causing TracFone to suffer substantial losses, and has caused immediate and irreparable injury to TracFone and to TracFone's trademarks. There have already been numerous instances of actual consumer confusion between Defendants' infringing products and services and TracFone's genuine products and services. TracFone thus seeks a preliminary injunction to halt Defendants' illegal activities during the pendency of this case, including, but not limited to, termination of Defendants' advertising and selling of cellular phones under any of TracFone's trademarks or brands.

**FACTUAL BACKGROUND**

**A.      TracFone's Business Model**

TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its telecommunications products and services under the TracFone, TelCel, Telcel America, NET10, SafeLink Wireless, Straight Talk and  ("spiracle logo") brands. *See* Declaration of Kevin Wehling ("Wehling Decl.") at ¶ 22, attached hereto as **Exhibit A**.

TracFone has used, and continues to use, among others, the following trademarks in commerce: TracFone, NET10, SafeLink Wireless, Straight Talk and spiracle logo and has federal trademark registrations for all of these marks (hereinafter, the "Marks"). Wehling Decl., ¶¶ 22, 27-28. The TracFone and spiracle logo trademarks are incontestable. *Id.*, ¶ 28. These Marks constitute the lawful, valued, subsisting and exclusive property of TracFone, and as a result of the high quality of TracFone's products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, and are well known and established to customers and the trade as symbols

2

identifying and distinguishing TracFone's products and services, and signifying distinctive products and services of exceptional quality. *Id.*, ¶ 30.[1]

The TelCel and TelCel America marks are owned by Administradora de Marca Rd. S. de R.L. de C.V., and TracFone has the right to use these marks and to pursue any infringement or other legal action related to them. *Id.*, ¶ 29.[2] As a result of long, exclusive use, extensive advertising campaigns, and tremendous product sales, the TracFone marks have become associated in the public mind with a single source, TracFone Wireless, Inc., and its affiliates. *Id.*, ¶ 32.

TracFone's service enables its customers to prepay for their wireless service by purchasing TracFone prepaid airtime and specially manufactured wireless phones. *Id.*, ¶ 22. Customers load airtime minutes into their TracFone prepaid phones using codes and proprietary online tools generated from PIN numbers associated with the TracFone prepaid airtime or through a TracFone customer service representative. *Id.* TracFone's reputation is based upon its ability to deliver an affordable and quality product to its consumers. *Id.*, ¶ 25. Only TracFone and its authorized, affiliated sales agents are permitted to sell TracFone cellular phones, prepaid airtime cards, TracFone prepaid airtime minutes, and use TracFone's marks. *Id.*, ¶ 33.

### B.    Defendants' Illegal Conduct

In recent months, TracFone has learned that Defendants are fraudulently advertising and selling certain premium brands of cellular phones with unlimited minutes to Mexico under TracFone and/or one of its brands, including but not limited to TelCel or TelCel America, and

---

[1] Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached to the Wehling Declaration at Composite Exhibit KW-1.

[2] Copies of the TelCel and TelCel America trademarks are attached to the Wehling Declaration at Composite Exhibit KW-2.

once Defendants receive payment, they then deliver substantially less expensive TracFone phones to these customers. Wehling Decl. at ¶ 10. As a result, TracFone retained a private investigation firm specializing in intellectual property investigations, to conduct an investigation of Defendants' purchasing and re-sale of TracFone cellular phones. *Id.*, ¶ 8-10. A summary of these evidence related to this activity is described in the Declaration of Cindy Talatham ("Talatham Decl."), attached hereto as **Exhibit B**.

In sum, the investigation established that Defendants, in a collaborative effort, are fraudulently advertising and selling premium TracFone cellular phones. Defendants, representing themselves as and employees or representatives of TracFone and/or one of its brands, including but not limited to TelCel or TelCel America, advertise through, among other means, e-mail communications to prospective customers, often targeting Spanish-only speakers and recent immigrants, offering to sell premium cellular telephones such as Apple iPhone or Samsung Galaxy with unlimited minutes to Mexico. Wehling Decl., ¶ 4. Some e-mail communications contain TracFone's spiral logo. *Id.* ¶ 9.

Customers purchase the infringing products—represented to be a premium TracFone cellular phone—through this scheme involving the named Defendants. (*Id.*, ¶¶ 4-5). Several of the defrauded customers identified the sellers of these phones as The Real Imagination, LLC, whose members include Quisca, Santillana, and Washington and which has a location of 47 Sawfish Court, Kissimmee, Florida, and Rolo, operated by Lopez. *Id.* ¶¶ 5-7; Talatham Decl., ¶ 5. Furthermore, TracFone has identified multiple receipts (including from Amazon.com) for TracFone phones and products along with delivery packages and labels related to the 47 Sawfish Court address, Imagination, or Quisca, bank receipts in the names of Imagination and Washington, TracFone gift card registrations in the name of Mateo, and a vehicle at the property

registered to Mateo.  Talatham Decl., ¶¶ 5-12.  Defendants, however, do not send the premium TracFone phone that was advertised and that customers ordered but instead a far less expensive TracFone cellular device.  Wehling Decl. ¶¶ 4-5.

### C.   Harm Caused by Defendants' Schemes

Defendants' Phone Switch Scheme substantially harms TracFone and its consumers who purchase the fraudulently advertised premium cellular phone with unlimited minutes and receive a far less expensive TracFone phone because the consumers are misled as to the source, sponsorship, and origin of their TracFone cellular phone and receive an inferior product than the one advertised and believed to have been purchased.  *Id.*, ¶¶ 12-17.  TracFone has already received several customer calls and complaints by confused and angry consumers regarding Defendants' Phone Switch Scheme, for which TracFone incurs substantial costs.  *Id.*, ¶¶ 5, 15.  These customers contacted TracFone believing that they had purchased genuine TracFone premium cellular phones and were angry at TracFone when they received the less expensive phone.  *Id.*  These problems do not exist for customers who purchase services from TracFone.  *Id.,* ¶ 16.   As a result, TracFone's reputation is harmed by Defendants' conduct.  *Id.*, ¶¶ 17-18.  Defendants' conduct has also resulted in the dilution of TracFone's trademarks, substantial harm to TracFone's business reputation and goodwill, and a greater likelihood of confusion, mistake and deception as to the source of origin of TracFone products unlawfully sold by Defendants and as to the relationship between TracFone and Defendants.  *Id.*, ¶ 17.

### MEMORANDUM OF LAW

Defendants are violating numerous state and federal laws and causing irreparable injury to TracFone.  TracFone is entitled to preliminary injunctive relief under the Lanham Act, 15

U.S.C. §1116(a), which provides that district courts "shall have power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable."

"To support a preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Rather, the court may issue a preliminary injunction if it determines that the evidence[3] establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Id.*; *see also BellSouth Telecomms., Inc. v. MCI Metro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005). These elements are satisfied and TracFone is entitled to injunctive relief because Defendants' Phone Switch Scheme continues to cause irreparable harm to TracFone and the TracFone trademarks.

### A. TracFone is Substantially Likely to Succeed on the Merits

#### 1. Defendants Are Violating §1114(1) of the Lanham Act

Section 32(1) of the Lanham Act protects against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §1114(1)(a). A plaintiff demonstrates a violation of §1114(1) if it can show, "first, that its mark

---

[3] The Wehling and Talatham Declarations and exhibits attached to this motion are appropriate evidence in support of the relief requested by TracFone here. *See Levi Strauss*, 51 F.3d at 985 (holding that a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding at the preliminary injunction stage).

is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989); *see also Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

a.   <u>TracFone Has Valid Trademarks</u>

TracFone has used, and continues to use, trademarks in commerce, including its Marks. Pursuant to section 7(b) of the Lanham Act, a certificate of registration of a trademark issued by the United States Patent and Trademark Office is "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate." 15 U.S.C. §1057(b). Furthermore, if a registered trademark is incontestable, its validity, ownership, and exclusive right of use are conclusive and irrebuttable, subject only to certain limited affirmative defenses which are not applicable here. 15 U.S.C. §1115(b). TracFone's Certificates of Registration conclusively demonstrate that TracFone has valid trademarks. *See Dieter*, 880 F.2d at 326. True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office are attached to the Wehling Decl. at Composite Exhibit KW-1.

b.   <u>Defendants' Use of TracFone's Trademarks Is Likely to Cause Confusion</u>

The Eleventh Circuit considers seven factors to determine whether there is a likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media used; (6) defendant's intent; and, (7) actual confusion. *See Dieter*, 880 F.2d at 326. Each of these factors demonstrates that Defendants' infringing products and services are likely to cause confusion.

7

### 1.   Type of Mark

Courts determine the level of protection to be afforded a mark based upon the mark's strength: the stronger the mark, the greater the scope of protection. *Frehling Enters., Inc.*, 192 F.3d at 1335. Marks can be grouped into one of four categories: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Id.* Third party use of the Marks is another important factor in determining a mark's strength—"[t]he less that third parties use the mark, the stronger it is, and the more protection it deserves." *Frehling Enters., Inc.*, 192 F.3d at 1336. The final factor to consider in determining the strength of a mark is whether it is "incontestable"—the strength of the mark is enhanced if the United States Patent and Trademark Office has declared a mark "incontestable." *Id.*

TracFone's Marks—which are arbitrary marks—are due considerable protection based on the foregoing factors. An arbitrary mark, such as 'Sun Bank' when applied to banking services, is one that bears no relationship to the product and is the strongest types of mark. *Id.* at 1335-36. Just as the "Sun Bank" mark is arbitrary as applied to banking services, *see id.*, TracFone's Marks are arbitrary as applied to prepaid phone service and are entitled to substantial protection. *Id.* at 1335-36. Second, only TracFone and its affiliates use the Marks. *See Frehling Enters., Inc.*, 192 F.3d at 1336 (finding that no third-parties use the marks is another indication of the strength of the Marks). Finally, as demonstrated by the United States Trademark Registration attached to the Wehling Decl. at Exhibit "KW-1", the TracFone and spiracle logo trademarks are "incontestable" and, therefore, entitled to another layer of protection.

### 2.   Similarity of the Marks

In determining the similarity of the marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in

which they are used." *Frehling Enters.,* 192 F.3d at 1337. In this case, Defendants have been using identical marks in their infringing advertising. Wehling Decl., ¶ 19. Defendants are not affiliated with TracFone and do not have permission to use TracFone's Marks. Defendants' use of identical marks causes confusion among consumers. *See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.,* 303 F.3d 1242, 1248 (11th Cir. 2002).

3.      *Similarity of the Products the Marks Represent*

"The greater the similarity between the products and services, the greater the likelihood of confusion." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 (11th Cir. 1985). Defendants' products and services appear virtually identical to TracFone's cellular phones; Defendants are illegally re-selling TracFone phones. Wehling Decl., ¶¶ 4-5, 10, 14, 19.

4.      *Similarity of the Parties' Retail Outlets and Customers*

"This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling Enters.,* 192 F.3d at 1339. Defendants' infringing products and services are sold through online advertising and appear to the customer as an authentic TracFone product and/or service being sent directly by TracFone. Wehling Decl., ¶¶ 4-5, 9. Defendants are targeting the same consumers as TracFone—individuals looking for affordable, high quality wireless telephones. *Id.; See Ambrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1541 (11th Cir. 1986) ("[l]ikelihood of confusion is more probable if the products are sold through the same channels to the same purchasers").

5.      *Similarity of Advertising Media*

"This factor looks to each party's method of advertising." *Id.* Although TracFone's advertising is much more extensive than Defendants', Defendants, just like TracFone, advertise

on the internet. *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980) (finding the greater the similarity between the advertising campaigns, products and services, the greater the likelihood of confusion).[4]

### 6. Defendants' Intent

This factor looks to whether "a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." *Frehling Enters.*, 192 F.3d at 1340. Likelihood of confusion can be demonstrated as a matter of law if this factor is present. *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179 (11th Cir. 1994); *Frehling Enters.*, 192 F.3d at 1340. Defendants' Phone Switch Scheme includes advertising for sale of TracFone premium phones with unlimited minutes to Mexico, which demonstrates that they seek to derive a benefit from TracFone's business reputation. Wehling Decl., ¶¶ 4-5, 9. Further, Defendants falsely advertise that they are representatives of TracFone and/or one its brands, including but not limited to TelCel or TelCel America, in order to appear as if they are a legitimate, well-respected business like TracFone. *Id.*

Defendants' orchestration of a plan to sell premium TracFone phones (under TracFone's trademarks) and deliver less expensive products demonstrates that they specifically intended to derive a benefit from TracFone's business reputation as a leading provider of wireless service.

### 7. Actual Confusion

"Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *John H. Harland Co.*

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983). Defendants' infringing conduct has already caused several instances of actual confusion and without injunctive relief, confusion will only escalate. (Wehling Decl., ¶¶ 4-5, 13). Based on the foregoing, TracFone is likely to succeed in establishing a likelihood of confusion between the parties' products and services.

### 2.     Defendants Have Also Violated §1125(a) Of The Lanham Act

Section 1125(a) of the Lanham Act makes it unlawful for any person "who, on or in connection with any goods or services . . . uses in commerce any word, . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. §1125(a). The analysis of Defendants' violation of §1125(a) of the Lanham Act is essentially the same as the analysis of Defendants' violation of §1114(1). *See Babbit Electronics, Inc.*, 38 F.3d at 1181; *see also Planetary Motion, Inc. v. Techsplosion Inc.*, 261 F.3d 1188, 1193, 1200 n.22 (11th Cir. 2001) (recounting the elements of a §1125(a) violation). Thus, for the reasons stated in support of its §1114(1) claim, TracFone has also demonstrated a likelihood of success with regard to its claim that Defendants have violated §1125(a). *Babbit Electronics, Inc.*, 38 F.3d at 1181.

### 3.     Defendants Are Violating §1125(a)(1)(B) the Lanham Act

Section 1125(a)(1)(B) of the Lanham Act makes it unlawful for "[a]ny person who...in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. §1125(a)(1)(B). Thus, in order to establish a false advertising claim, TracFone must establish:

> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on

purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been – or is likely to be – injured as a result of the false advertising.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). *See also Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). If the advertisement is deemed false, the plaintiff does not need to offer evidence of deception. *Johnson*, 299 F.3d at 1247; *Pizza Hut*, 227 F.3d at 495.

Defendants falsely advertise and promote TracFone premium cellular phones to the public as authentic TracFone phones. Wehling Decl., ¶ 9. Such advertisements and statements misrepresent the nature, characteristics, and/or qualities of Defendants' infringing products, services and affiliation with TracFone. Accordingly, Defendants' deception and misrepresentations have a material effect on purchasing decisions, affect interstate commerce, and if not immediately enjoined will continue to cause irreparable harm to TracFone. *See Johnson*, 299 F.3d at 1247; *Pizza Hut*, 227 F.3d at 495.

**B.      TracFone Will Suffer Irreparable Injury if the Injunction is not Granted**

TracFone will presumptively suffer irreparable harm pursuant to the CFAA if Defendants are not required to halt their illegal activities.[5]  With respect to TracFone's Lanham Act claims, irreparable harm to a trademark owner is inherent in any situation involving the unauthorized use of a mark that is likely to cause confusion, mistake or deception as to whether the defendant's goods are affiliated with or connected to the trademark owner's goods. *See Laboratorios Roldan, C. por A. v. Tex Intern., Inc.*, 902 F.Supp. 1555, 1571 (S.D. Fla. 1995) ("[A] plaintiff suffers irreparable injury due to the loss of control over products bearing its trademark or trade

---

[5] TracFone need not demonstrate irreparable harm in connection with its CFAA claims, as injunctive relief is authorized by statute upon demonstration of the violation of the statute. *See* 18 U.S.C. §1030(g).

dress."). The Eleventh Circuit has stated that where, as in this case, a strong showing of likelihood of confusion has been made, irreparable harm may be presumed. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989).

Trademark infringement "is, by its very nature, an activity which causes irreparable harm—irreparable in the sense that no final decree of a court can adequately compensate a plaintiff for the confusion that has already occurred." *Carling Brewing Co. v. Philip Morris, Inc.* 277 F. Supp 326, 335 (N.D. Ga. 1967); *see also Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) ("The existence of a likelihood of confusion constitutes irreparable injury as a matter of law sufficient to satisfy the requirements of Fed. R. Civ. P. 65."). Furthermore, as is true in any intellectual property case, such damages are extremely difficult, if not impossible, to quantify in a monetary way.

Even without the legal presumptions afforded it by the law of this Circuit, TracFone will be irreparably harmed because Defendants' actions, if allowed to persist, will continue to cause TracFone to suffer harm to its business reputation and dilution of its distinctive TracFone Marks as Defendants sell more and more premium TracFone cellular phones and then deliver less expensive alternatives. *Laboratorios Roldan*, 902 F. Supp. at 1571; *cf. Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (recognizing that the continued sale of counterfeit jeans would damage the plaintiff's business reputation and decrease its legitimate sales and holding that "such trademark infringement 'by its nature causes irreparable harm'" (quoting *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989)).

Moreover, the actual irreparable harm that TracFone has suffered, although quite serious now, will worsen over time if Defendants are not enjoined by the Court. Defendants could cause TracFone further irreparable harm by continuing to misrepresent their sales of TracFone cellular

phones under the TracFone brand and continue to provide products that do correspond to premium cellular phone the consumer purchased.

Additionally, when consumers expectations are not met, when they receive a less expensive phone than paid for, TracFone's brand and products will be devalued. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and therefore is an appropriate basis for injunctive relief.").

**C.     The Balance of Hardships Weighs in Favor of a Preliminary Injunction**

Defendants have no legitimate interest in advertising TracFone premium cellular phones with unlimited minutes when, in fact, they have no association with TracFone and when they do not produce the premium product to the consumer. *See Laboratorios Roldan*, 902 F.Supp. at 1571 (finding no legitimate interest in the defendants' continued use of products with a trade mark and trade dress that was similar to that already actively used by the plaintiffs). It is unlikely that Defendants' livelihood relies entirely on defrauding TracFone through the Phone Switch Scheme and the illegal and unauthorized re-sale of the more inexpensive TracFone phones —which is the focus of TracFone's request for injunctive relief.

TracFone, on the other hand, is threatened with irreparable injury if a preliminary injunction is not issued. The continued unauthorized advertising and sale of premium TracFone phones and the shipment of a less expensive product in its stead poses a substantial threat to TracFone's business reputation. Further, Defendants conspiracy to engage in this Phone Switch Scheme substantially damages TracFone on a continuous basis. Defendants' actions threaten to irreparably damage TracFone's hard-earned business reputation as a provider of quality wireless service dedicated to customer service as well as to exponentially multiply the continuing fraud.

14

Furthermore, the monetary benefits that Defendants receive from their actions are not benefits to be protected from injury. *WPOW, Inc. v. MRLJ Enters.*, 584 F. Supp. 132, 138 (D.D.C. 1984); *Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 945 (N.D. Ill. 1997) ("Loss of profits from infringing products warrant little consideration in the balancing of harms analysis."). Defendants should not consider it a burden to follow the law by not infringing TracFone's trademarks and providing inferior products under TracFone's brand. *See S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (infringer's "self-inflicted harm is far outweighed by the immeasurable damage done Jiffy Lube by the infringement of its trademark"); *Burger King Corp. v. Majeef*, 805 F.Supp. 994, 1006 (S.D. Fla. 1992) (applying same reasoning). Under these circumstances, the "issuance of a preliminary injunction will merely enjoin Defendants from conducting a business which is already prohibited by state and federal law." *MediaOne of Delaware, Inc. v. E&A Beepers & Cellulars*, 43 F. Supp. 2d 1348, 1354 (S.D. Fla. 1998).

**D.      A Preliminary Injunction Would Not Disserve The Public Interest**

The public interest is advanced by enforcing faithful compliance with the laws of the United States and the State of Florida. A preliminary injunction in this case "is not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie. S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001); *BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc.*, 792 F.Supp. 775, 785 (M.D. Fla. 1991) ("In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount."). There is no public interest in the customers' receiving a product different from and inferior to what they believe to have purchased. To the contrary, the public is best served by being protected from sellers of infringing products and

services.   Accordingly, the public interest will be served by issuing the requested injunctive relief.

### E.    TracFone's Should Not Be Required to Post a Bond

Although Rule 65(c) prohibits the issuance of a restraining order or preliminary injunction except upon the posting of security, the "Court has the discretion to issue a preliminary injunction without requiring Plaintiffs to give security, notwithstanding the seemingly mandatory language of the rule." *Tancogne v. Tomjai Enterp. Corp.*, 408 F. Supp. 2d 1237, 1252 (S.D. Fla. 2005); *see also University Books and Videos v. Metropolitan Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999).   TracFone believes that no bond is necessary to protect the Defendants' interests in this case.   As set forth in the Complaint, Defendants have no legitimate right to continue to perpetuate the Phone Switch Scheme on unsuspecting victims.    Further, the facts recited above confirm that TracFone has a high probability of succeeding on the merits of its claim.   This is a factor supporting waiver of the bond requirement.  *University Books and Videos*, 33 F. Supp. 2d at 1374.   For the reasons set forth above, TracFone requests that the bond requirement is waived.

### CONCLUSION

Plaintiff TracFone Wireless, Inc. respectfully requests that this Court enter a Preliminary Injunction against Defendants in the form submitted to the Court in **Exhibit C**.

### LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 7.1, undersigned counsel certifies that he has conferred with the Defendants prior to making this motion, but was unable to reach agreement with respect to the relief request herein.

Dated: July 10, 2013                                        By:  *s/ Aaron S. Weiss*

Aaron S. Weiss (FL Bar #48813)
Email:  aweiss@carltonfields.com
Carlton Fields, P.A
100 Southeast Second Street, Suite 4200
Miami, Florida  33131
Telephone No.  (305) 530-0050
Facsimile No.   (305) 530-0055

James B. Baldinger (FL Bar # 869899)
Email: jbaldinger@carltonfields.com
Carlton Fields, P.A
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone No.  (561) 659-7070
Facsimile No.   (561) 659-7368

*Attorneys for Plaintiff TracFone Wireless, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I **HEREBY CERTIFY** that on July 9, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   *s/ Aaron S. Weiss*
       Aaron S. Weiss
